UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT L. DYKES #201541,

        Plaintiff,

v.

MICHAEL BROWN, et al.,

        Defendants.
_____/

Case No. 2:24-cv-00017

Hon. Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

**I. Introduction**

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF No. 18.) Defendants also move for dismissal based on statute of limitations grounds.

State prisoner Robert L. Dykes-Bey filed an amended complaint under 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment rights by unnecessarily exposing him to COVID-19. (ECF No. 20.) Dykes-Bey says that he contracted COVID-19 while he was confined in the Kinross Correctional Facility (KCF) in October of 2020. (*Id.*) Dykes-Bey asserts that the six named Defendants – Michigan Department of Corrections (MDOC) Director Washington, Warden Brown and Corrections Officers (COs) Orsborne, Baker, King, and Newman – failed to provide him with protection from the COVID-19 virus in 2020, until he was transferred from KCF in October of 2021. Dykes-Bey says that after he recovered

from COVID-19, he feared that he would get re-infected with the virus because Defendants failed to take appropriate mitigating measures. Dykes-Bey asserts that Director Washington continues to place his life in danger by failing to take appropriate mitigating measures to prevent the spread of COVID-19 in the MDOC.

Defendants move for summary judgment, arguing first that Dykes-Bey failed to exhaust his administrative remedies. Dykes-Bey has shown, however, that he did not have available remedies to exhaust because either the issues he presented were considered "non-grievable" by the MDOC or because he was refused grievance forms while on modified access to the grievance process.

Defendants also move for summary judgment by arguing that some of the claims asserted in the complaint are outside the three-year statute of limitations. In the opinion of the undersigned, for the reasons addressed in this R&R, Dykes-Bey's claims that arose *prior to January 29, 2021*, should be dismissed from this lawsuit.

**II. Facts and procedural History**

Dykes-Bey alleges that Defendants violated his Eighth Amendment rights starting before he contracted COVID-19 in October of 2020 and continuing until he was transferred from KCF in October of 2021. Finally, Dykes asserts that he currently has no way to protect himself from contracting COVID-19 because Director Washington ended the COVID-19 protocols.

Dykes-Bey filed this action on February 1, 2024. (ECF No. 1.) On March 29, 2024, the Court issued an opinion and order dismissing the claims for injunctive relief and the official capacity claims against Defendants Washington and Brown. (ECF

Nos. 7 and 8.)  The remaining Eighth Amendment claims are for monetary damages against Defendants Warden Brown, MDOC Director Washington, Correctional Officer (CO) Orsborne, CO Baker, CO King, and CO Newman in their personal capacities.  (*Id*.)  Dykes-Bey seeks $100,000.00 in damages from each Defendant.  (ECF No. 20, PageID.317.)

Dykes-Bey's amended complaint was filed on July 11, 2024.  (ECF No. 20.)  Dykes-Bey alleges that in October of 2020, Defendant CO Baker fell ill while she was working in his unit.  (ECF No. 20, PageID.302.)  Dykes-Bey learned that she had COVID-19 and a few days later several prisoners began getting COVID-19 symptoms.  (*Id*.)  Dykes-Bey contracted COVID-19 a week later.  (*Id*.)

Dykes-Bey says that Director Washington failed to establish measures to mitigate the spread of COVID-19 into the prison which caused the virus to infect the prison population.  (*Id*., PageID.303.)  Dykes-Bey asserts that despite the Michigan Department of Health and Human Services emergency order mandating the testing of prison staff using diagnostic or antigen testing for COVID-19, Director Washington never issued a Department Office Memorandum (DOM) mandating testing for prison staff.  (*Id*.)  Dykes-Bey says that Director Washington failed to test staff for COVID-19.  (*Id*.)

Dykes-Bey says that he had pre-existing conditions that placed him at risk of COVID-19 complications and that he now uses a CPAP machine due to his COVID-19 exposure.  (*Id*., PageID.303.)  Further, Dykes-Bey says that although prison staff were issued KN95 masks, prisoners were issued ineffective cloth masks.  (*Id*.)  Dykes-

Bey says that Director Washington provided him with no protection from COVID-19, and that he still has not been provided with a proper face mask. (*Id.*)

Dykes-Bey says that Director Washington failed to issue gloves and gowns to prisoners to clean common surfaces, and the spray bottles available to prisoners that contained cleaning fluids were empty most of the time. (*Id.*) Dykes-Bey says that he was exposed to the virus on surfaces in the prison and continues to be exposed to COVID-19 in this manner. (*Id.*, PageID.305.) Dykes-Bey asserts that he is "still being exposed to the virus without any means of protection, as a result I did contract COVID, and I am living under the constant threat of re-infection." (*Id.*)

Dykes-Bey says that he was without soap approximately 22 days per month, resulting in him getting COVID-19 and constantly being at risk to re-infection. (*Id.*, PageID.306.) Further, Dykes-Bey says due to the physical make-up of the prison and overcrowding of prisoners he could not social distance forcing his exposure to COVID-19 and subjecting him to a potential re-infection of the virus. (*Id.*) Dykes-Bey says that he does not wish to take "experimental vaccines that cannot protect me from contracting the virus" and that he would like the opportunity to protect himself from exposure to the virus. (*Id.*) Dykes-Bey says that "there is no telling how much irreparable damage has already been done to my brain, and respiratory system, and what kind of further damage will be caused by repeatedly [being] infected by the virus." (*Id.*, PageID.306-307.)

In April of 2020, Dykes-Bey says that he questioned Warden Brown regarding how staff were being tested for COVID-19 before entering the prison and when

4

Warden Brown informed him that staff were being questioned and their temperatures were being checked, Dykes-Bey asked why 15-minute rapid tests were not used. (*Id.*, PageID.307.) Warden Brown allegedly replied that rapid tests were not mandated. (*Id.*) Dykes-Bey says that he informed Warden Brown that checking for symptoms was insufficient because an individual could be asymptomatic or not have symptoms for the first 3-4 days. (*Id.*) Dykes-Bey says that the failure of Warden Brown to conduct sufficient testing on staff before they entered the prison between October 2020 and October 2021, violated his Eighth Amendment rights. (*Id.*, PageID.308.) Dykes-Bey asserts that Warden Brown failed to create a separate living space for prisoners most vulnerable to COVID-19 between October 2020 and October 2021. (*Id.*)

During October of 2020, Dykes-Bey says that Warden Brown allowed CO Baker to enter the prison with COVID-19 because he refused to use COVID-19 rapid tests, and this resulted in the virus spreading rapidly through the prisoner population. Dykes-Bey contracted COVID-19 soon after in October of 2020. (*Id.*, PageID.309-310.) Dykes-Bey says that after he tested positive for COVID-19 he was never transferred to a facility designated for COVID-19 prisoners. (*Id.*, PageID.311.) Dykes-Bey says that Warden Brown should have transferred him to a unit or facility for vulnerable prisoners to protect him from possible reinfection of the virus. (*Id.*) Dykes-Bey says that the prison failed to increase soap and toilet paper purchases between October 2020 and October 2021, and he was denied extra soap and toilet paper. (*Id.*)

Dykes-Bey says that Defendant King, denied him bleach refills despite his 3-4 requests per day for refills. (*Id.*, PageID.312.) Dykes-Bey says that Defendants Orsborne and Baker denied him soap and toilet paper on several occasions. (*Id.*, PageID.313.) Dykes-Bey alleges that the denial of bleach, soap, and toilet paper lead to him contracting COVID-19 and exposed him to a risk of re-infection <u>from February 25, 2021, to October 20, 2021</u>. (*Id.*, PageID.314.)

Dykes-Bey says that CO Newman "disregarded the COVID protocols Defendant Washington put in place." (*Id.*, PageID.314.) He says that she patted him down wearing the same gloves that she wore to pat-down other prisoners, or repeatedly searched prison cubes without changing gloves. (*Id.*) Dykes-Bey says that Newman's practice of failing to change her gloves caused him to contract COVID-19. (*Id.*, PageID.315.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one

---

[1] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir.

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

---

Mar. 19, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy

Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust

10

administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596.

11

Defendants argue that Dykes-Bey did not exhaust any of the claims asserted in his complaint. Dykes-Bey says that when he filed grievances on the issues presented, his grievances were rejected because the issues presented were considered non-grievable. In other words, if true, there existed no available grievance remedy to exhaust before Dykes-Bey filed his lawsuit. Dykes-Bey also argues that when he attempted to grieve the continuing nature of alleged violations his requests for grievance forms were denied by the grievance coordinator because he was on modified access to the grievance process.

First, Dykes-Bey states that while he was on modified access to the grievance process, he requested grievance forms from the grievance coordinator to file a grievance against Director Washington and Warden Brown for Eighth Amendment violations regarding his continued exposure to COVID-19 while in prison. (ECF No. 20-5, PageID.348.) This request was denied by Grievance Coordinator Gustafson. (*Id.*, PageID.350.)

Second, Dykes-Bey says that he filed Grievance KCF-20-09-815-27z against Defendants Orsborne, Baker, and King regarding the failure to refill the cleaning spray bottles. (ECF No. 19-3, PageID.286.) That grievance was rejected as a non-grievable issue. (*Id.*, PageID.283-285, 287.) While on modified access to the grievance system, Dykes-Bey made a request for grievance forms to file a grievance on Defendants Orsborne, Baker, King, and Newman for exposing him to COVID-19 for

---

For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

failing to fill bleach bottles, and to provide soap and toilet paper. (ECF No. 20-6, PageID.352.) Dykes-Bey says that this request was denied.

Third, Dykes-Bey says that he filed Grievance KCF-20-10-865-28e against Orsborne and Baker for refusing to provide him with toilet paper. (ECF No. 19-3, PageID.281.) The grievance was rejected due to a failure to attempt to timely resolve the issue, and because the issue affected other prisoners in the general population it should be referred to the Warden's Forum. (*Id.*, PageID.282.) Due to the continuing failure to receive toilet paper, Dykes-Bey requested a grievance form while on modified access to address this issue against Defendants. (ECF No. 20-6, PageID.352.) Dykes-Bey says that he was denied a grievance form by the Grievance Coordinator.

Fourth, Dykes-Bey says that he filed Grievance KCF-20-10-888-27z against Newman for wearing the same gloves when she searched prisoners and prison cubes. (ECF No. 19-3, PageID.276.) The grievance was rejected for presenting a non-grievable issue. (*Id.*, PageID.277.) While on modified access, Dykes-Bey says that he was denied a grievance form to resubmit this issue a second time. (ECF No. 20-6, PageID.352.)

Dykes-Bey has shown that either the issues presented in his complaint were considered non-grievable by the MDOC or that he was denied grievance forms to pursue issues raised in his complaint. As such, Dykes-Bey did not have an available grievance remedy to pursue.

In the opinion of the undersigned, Defendants have failed to establish their burden of showing that no genuine issue of material fact exists on the issue of exhaustion of administrative remedies. Accordingly, it is recommended that the Court deny Defendants' motion for summary judgment on the exhaustion issue.

## IV. Statute of Limitations

Defendants argue that the three-year statute of limitations period bars at least some of the claims asserted by Plaintiff. Dykes-Bey alleges that Defendants violated his Eighth Amendment rights beginning in April of 2020 until the time he filed his complaint. Dykes-Bey dated his original complaint January 29, 2024, and it was filed on February 1, 2024. (ECF No. 1, PageID.22.) Applying the prison mailbox rule, the complaint should be considered filed on January 29, 2024. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (Under the prison mailbox rule, absent contrary evidence, a prisoner's § 1983 complaint is deemed filed on the date it is signed).

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985). For civil rights suits filed in Michigan under Section 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999) (applying Michigan's three-year limitation period for personal injury claims to prisoner section 1983 actions). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*,

14

742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.

First, Dykes-Bey cannot argue that any tolling rules apply while he exhausted his administrative remedies because, as Dykes-Bey has shown, he did not have any remedy he needed to exhaust before he filed this lawsuit. Although Dykes-Bey argues that his claims are based upon continuing violations, the allegations in his complaint are not based upon continuing violations of his Eighth Amendment rights. For example, Dykes-Bey alleges that he contracted COVID-19 in October of 2020. Then he asserts that he fears reinfection because he cannot protect himself from COVID-19. These are by nature different claims. A fear of contracting COVID at some future point in time, is not the same as contracting COVID-19 when the virus was newly discovered in 2020.

As such, Dykes-Bey claims are limited by the applicable three-year limitations period. Therefore, it is recommended that the Court dismiss all claims asserted by Dykes-Bey that accrued prior to January 29, 2021.

## V. Recommendation

The undersigned respectfully recommends that this Court grant in part and deny in part Defendants' motion for summary judgment. It is recommended that the Court dismiss Dykes-Bey's claims that accrued prior to January 29, 2021, on statute of limitations grounds. It is further recommended that the Court deny the motion for summary judgment on all other grounds.

If the Court accepts this recommendation the following Eighth Amendment claims against Defendants remain:

(1) **Director Washington**: failure to take measures to mitigate COVID-19 in the prison system from January 29, 2021, until present;

(2) **Warden Brown**: failure to test staff before they enter the prison, create a separate living area for most vulnerable prisoners, and to take measures to prevent the spread of COVID-19 between January 29, 2021, and October 2021;

(3) **CO Orsborne**: denial of soap, toilet paper, and bleach between January 29, 2021, and October of 2021;

(4) **CO Baker**: denial of soap, toilet paper, and bleach between January 29, 2021, and October of 2021;

(5) **CO King**: denial of bleach between January 29, 2021, and October of 2021; and

(6) **CO Newman**: used same gloves without changing them to conduct pat-down searches of prisoners and searches of prisoners' cubes between January 29, 2021, and October of 2021.

Dated: October 1, 2024                          /s/ *Maarten Vermaat*
                                                MAARTEN VERMAAT
                                                U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P.

72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).