UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT L. DYKES #201541,

        Plaintiff,

v.

MICHAEL BROWN, et al.,

        Defendant.

                          /

Case No. 2:24-cv-00017

Hon. Robert J. Jonker
U.S. District Judge

**REPORT AND RECOMMENDATION**

**I. Introduction**

This Report and Recommendation (R. & R.) addresses Defendants' motion to dismiss. (ECF No. 33.)

State Prisoner Robert L. Dykes filed an amended complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights by unnecessarily exposing him to COVID-19 while he was confined in the Kinross Correctional Facility (KCF). (ECF No. 19 (Amended Complaint).) Dykes says that he had previously contracted COVID-19 in October of 2020, but that he was afraid that he could be re-infected because Defendants failed to provide appropriate protection from COVID-19 exposure during his KCF confinement between January 29, 2021, until his transfer in October of that year. Dykes alleged that six Defendants violated his rights – Michigan Department of Corrections (MDOC) Director Washington, Warden Brown and Corrections Officers (COs) Orsborne, Baker, King, and Newman.

On March 29, 2024, the Court issued a screening opinion and order dismissing the claims for injunctive relief and the official capacity claims against Defendants Washington and Brown. (ECF Nos. 7 and 8.) The Court determined that Dykes alleged sufficient allegations to state a claim under the Eighth Amendment for money damages in Defendants personal capacities and allowed that claim to proceed. (*Id.*) On October 23, 2024, the Court issued an order dismissing claims that accrued prior to January 29, 2021. (ECF No. 25 (*Order Approving and Adopting R. & R.* (ECF No. 22)).)

The following Eighth Amendment claims for money damages remain:

(1) **Director Washington**: failure to take measures to mitigate COVID-19 in the prison system from January 29, 2021, until present;

(2) **Warden Brown**: failure to test staff before they enter the prison, failure to create a separate living area for most vulnerable prisoners, and failure to take measures to prevent the spread of COVID-19 between January 29, 2021, and October 2021;

(3) **CO Orsborne**: denial of soap, toilet paper, and bleach between January 29, 2021, and October of 2021;

(4) **CO Baker**: denial of soap, toilet paper, and bleach between January 29, 2021, and October of 2021;

(5) **CO King**: denial of bleach between January 29, 2021, and October of 2021; and

(6) **CO Newman**: used same gloves without changing them to conduct pat-down searches of prisoners and searches of prisoners' cubes between January 29, 2021, and October of 2021.

The Defendants move to dismiss the remaining claims against them. First, Defendants argue that Dykes lacks standing to assert his Eighth Amendment claims because he suffered no injury. Second, Defendants argue that Dykes's claims against Defendants Washinton and Brown are barred by *res judicata* because of a previous similar lawsuit filed by Dykes, also raising COVID-19 concerns, that was dismissed by final judgment on September 2, 2020. *Dykes-Bey v. Washington*, No. 2:20-cv-64, 2020 WL 5228990 (W.D. Mich. Sept. 2, 2020) *aff'd*, 2021 WL 75401773 (6th Cir. Oct. 1, 2021.) Third, Defendants argue that Dykes's complaint fails to state an Eighth Amendment claim because the MDOC implemented COVID-19 protocols and procedures that Defendants were tasked with carrying out. Finally, Defendants assert that they are entitled to the defense of qualified immunity based on the allegations in Dykes's complaint and the fact that the MDOC implemented COVID-19 protocols.

For the reasons stated below, it is recommended that the Court grant Defendants motion to dismiss the complaint because Dykes lacks standing to assert an Eighth Amendment claim against Defendants.

**II. Factual Allegations**

The Court previously set forth the facts alleged by Dykes as follows:

Dykes-Bey's amended complaint was filed on July 11, 2024. (ECF No. 20.) Dykes-Bey alleges that in October of 2020, Defendant CO Baker

3

fell ill while she was working in his unit. (ECF No. 20, PageID.302.) Dykes-Bey learned that she had COVID-19 and a few days later several prisoners began getting COVID-19 symptoms. (*Id.*) Dykes-Bey contracted COVID-19 a week later. (*Id.*)

Dykes-Bey says that Director Washington failed to establish measures to mitigate the spread of COVID-19 into the prison which caused the virus to infect the prison population. (*Id.*, PageID.303.) Dykes-Bey asserts that despite the Michigan Department of Health and Human Services emergency order mandating the testing of prison staff using diagnostic or antigen testing for COVID-19, Director Washington never issued a Department Office Memorandum (DOM) mandating testing for prison staff. (*Id.*) Dykes-Bey says that Director Washington failed to test staff for COVID-19. (*Id.*)

Dykes-Bey says that he had pre-existing conditions that placed him at risk of COVID-19 complications and that he now uses a CPAP machine due to his COVID-19 exposure. (*Id.*, PageID.303.) Further, Dykes-Bey says that although prison staff were issued KN95 masks, prisoners were issued ineffective cloth masks. (*Id.*) Dykes-Bey says that Director Washington provided him with no protection from COVID-19, and that he still has not been provided with a proper face mask. (*Id.*)

Dykes-Bey says that Director Washington failed to issue gloves and gowns to prisoners to clean common surfaces, and the spray bottles available to prisoners that contained cleaning fluids were empty most of the time. (*Id.*) Dykes-Bey says that he was exposed to the virus on surfaces in the prison and continues to be exposed to COVID-19 in this manner. (*Id.*, PageID.305.) Dykes-Bey asserts that he is "still being exposed to the virus without any means of protection, as a result I did contract COVID, and I am living under the constant threat of re-infection." (*Id.*)

Dykes-Bey says that he was without soap approximately 22 days per month, resulting in him getting COVID-19 and constantly being at risk to re-infection. (*Id.*, PageID.306.) Further, Dykes-Bey says due to the physical make-up of the prison and overcrowding of prisoners he could not social distance forcing his exposure to COVID-19 and subjecting him to a potential re-infection of the virus. (*Id.*) Dykes-Bey says that he does not wish to take "experimental vaccines that cannot protect me from contracting the virus" and that he would like the opportunity to protect himself from exposure to the virus. (*Id.*) Dykes-Bey says that "there is no telling how much irreparable damage has already been done to my brain, and respiratory system, and what kind of further damage

4

will be caused by repeatedly [being] infected by the virus." (*Id.*, PageID.306-307.)

In April of 2020, Dykes-Bey says that he questioned Warden Brown regarding how staff were being tested for COVID-19 before entering the prison and when Warden Brown informed him that staff were being questioned and their temperatures were being checked, Dykes-Bey asked why 15-minute rapid tests were not used. (*Id.*, PageID.307.) Warden Brown allegedly replied that rapid tests were not mandated. (*Id.*) Dykes-Bey says that he informed Warden Brown that checking for symptoms was insufficient because an individual could be asymptomatic or not have symptoms for the first 3-4 days. (*Id.*) Dykes-Bey says that the failure of Warden Brown to conduct sufficient testing on staff before they entered the prison between October 2020 and October 2021, violated his Eighth Amendment rights. (*Id.*, PageID.308.) Dykes-Bey asserts that Warden Brown failed to create a separate living space for prisoners most vulnerable to COVID-19 between October 2020 and October 2021. (*Id.*)

During October of 2020, Dykes-Bey says that Warden Brown allowed CO Baker to enter the prison with COVID-19 because he refused to use COVID-19 rapid tests, and this resulted in the virus spreading rapidly through the prisoner population. Dykes-Bey contracted COVID-19 soon after in October of 2020. (*Id.*, PageID.309-310.) Dykes-Bey says that after he tested positive for COVID-19 he was never transferred to a facility designated for COVID-19 prisoners. (*Id.*, PageID.311.) Dykes-Bey says that Warden Brown should have transferred him to a unit or facility for vulnerable prisoners to protect him from possible reinfection of the virus. (*Id.*) Dykes-Bey says that the prison failed to increase soap and toilet paper purchases between October 2020 and October 2021, and he was denied extra soap and toilet paper. (*Id.*)

Dykes-Bey says that Defendant King, denied him bleach refills despite his 3-4 requests per day for refills. (*Id.*, PageID.312.) Dykes-Bey says that Defendants Orsborne and Baker denied him soap and toilet paper on several occasions. (*Id.*, PageID.313.) Dykes-Bey alleges that the denial of bleach, soap, and toilet paper lead to him contracting COVID-19 and exposed him to a risk of re-infection <u>from February 25, 2021, to October 20, 2021</u>. (*Id.*, PageID.314.)

Dykes-Bey says that CO Newman "disregarded the COVID protocols Defendant Washington put in place." (*Id.*, PageID.314.) He says that she patted him down wearing the same gloves that she wore to pat-down other prisoners, or repeatedly searched prison cubes without changing

5

>  gloves. (*Id.*) Dykes-Bey says that Newman's practice of failing to change her gloves caused him to contract COVID-19. (*Id.*, PageID.315.)

(ECF No. 22, PageID.395-399.) As previously stated, the majority of these allegations have been dismissed by the Court. Only Dykes's claims that arose <u>after January 29, 2021</u>, remain in this case. Those claims focus on his concerns that he could be re-infected with the COVID-19 virus.

### III. Standing

Defendants argue that Dykes lacks standing to assert his claims that he was unnecessarily exposed to COVID-19 in the prison because he suffered no injury which could be redressed by an award of damages. Dykes alleges that he feared re-infection from COVID-19 while he was confined at KCF. Dykes has not alleged that he actually contracted COVID-19 after January 29, 2021.

For a plaintiff to invoke federal jurisdiction to bring suit in the federal courts, he must demonstrate standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992); *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004). Standing is central to the "case-or-controversy" requirement associated with Article III of the Constitution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiff has the burden of demonstrating that he (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable decision. *Id.*

Dykes has not alleged that he suffered any injury in fact. This Court has found that an inmate's allegation that he was exposed to COVID-19 positive prisoners or prison staff is not enough to invoke standing:

> Simply put, Plaintiff's fear that he was exposed to COVID-19 or might have contracted COVID-19 is not a concrete injury which can be redressed by an award of damages. *See, e.g.*, *Balas v. Stanish*, 2021 WL 5500512 at *4 (M.D. Pa., Nov. 23, 2021) (inmate's fears of contracting COVID-19 from other inmates insufficient to confer standing); *Sledge v. Erie County Prison*, 2021 WL 5041141 at *4-5 (W.D. Pa., Oct. 29, 2021) (same). Accordingly, Plaintiff's claims must be dismissed for lack of standing.

*Gaffney v. Artis*, 1:22-cv-275, 2023 WL 2753168, at *2 (W.D. Mich. Apr. 3, 2023). In *Merriweather v. Artis*, 1:22-cv-305, 2023 WL 6144485 (W.D Mich. Sept. 20, 2023), the Court dismissed an inmate's claim that he feared for his safety after being exposed to COVID-19 positive prisoners due to lack of standing – despite never contracting the virus – because "fear of exposure to the virus is not a concrete injury that can be redressed by an award of damages." *Id*. at *1.

Finally, even if Dykes has standing to assert the claim that he feared re-infection due to exposure to COVID-19, such a claim is not actionable. Dykes cannot bring a claim based solely on emotional damages. Absent physical injury, a plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id*. Plaintiff alleges no physical injury. Consequently, his claim for emotional damages is barred.

It is recommended that the Court dismiss Dykes' Eighth Amendment claims against Defendants for allegedly unnecessarily exposing him to COVID-19. In the

opinion of the undersigned, Dykes lacks standing to bring these claims because he failed to assert an injury in fact that can be redressed by monetary damages.

## IV. Recommendation

It is respectfully recommended that the Court grant Defendants' motion and dismiss this case because Plaintiff lacks standing to assert an Eighth Amendment claim against Defendants.[1]

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   February 12, 2025                                               /s/ *Maarten Vermaat*
                                                                          MAARTEN VERMAAT
                                                                          U.S. MAGISTRATE JUDGE

---

[1]   The undersigned makes no recommendation regarding Defendants' *res judicata* argument or argument that the complaint fails to state a claim upon which relief may be granted, especially because this Court has already ruled that Dykes stated an Eighth Amendment claim in the screening opinion.  Finally, the Court makes no recommendation regarding Defendants' entitlement to qualified immunity.